## LEVI SPIEGELBERG *v.* JOHN H. MINK.

APPEALS WHERE JURY DISPENSED WITH.—Where a cause is by consent tried by the judge, without the intervention of a jury, the losing party, to entitle himself to a revision of the facts by the supreme court, should move for a new trial, and if refused, should embody the evidence in a bill of exceptions.

PAROL EVIDENCE AS TO COMPENSATION OF APPRAISER OF ESTATE.—Parol evidence is admissible to show that an appraiser of a decedent's estate agreed to serve without compensation, and also that he performed no service.

APPRAISER'S RIGHT TO COMPENSATION.—Where an administrator has joined with a duly appointed appraiser in listing and valuing the property of the estate, and has accepted and acted upon the appraisement without objection, expressing himself as satisfied with it, he can not resist payment of· the appraiser's legal fees on the ground that no services were performed.

GRATUITOUS SERVICES.—Where one performs services for another with the intention of not demanding compensation, and is so understood by the other party, he can not afterwards maintain an action for compensation.

APPRAISER'S WAIVER OF COMPENSATION.—Clear and satisfactory proof will be required to defeat the claim of an appraiser of a decedent's estate to the fees allowed by law, on the ground that he consented to serve gratuitously.

JURISDICTION OF PROBATE COURT AS TO ALLOWING CLAIMS.—The allowance of claims against a decedent's estate is so peculiarly within the province of a probate court, that another court will not be disposed to disturb its action if the proceedings appear to have been fair and regular.

APPEAL from the district court for Santa Fe county. The facts appear from the opinion.

*R. H. Tompkins,* for the appellant.

*M. Ashurst,* for the appellee.

By Court, BENEDICT, C. J.:

Mink presented, in the probate court for the county of Santa Fe, a claim against Levi Spiegelberg, as administrator of Elias Spiegelberg, deceased, for the sum of one hundred and twenty dollars, for service as an appraiser of decedent's estate. The probate approved of sixty-three dollars and forty cents of the claim, and rejected the balance. The administrator then appealed to the district court, and, on trial, judgment was rendered against the appellant for the same amount adjudged against him in the probate, and

thereupon he appealed to this court. The points made in the cause are few. We deem it proper to notice one matter of practice which the record brings to view. In the district court neither party required a jury. The judge was substituted in the place of the jury, heard the testimony, and found the judgment, or rather the verdict, upon the facts submitted. Spiegelberg excepted to the decision of the court, and tendered his bill of exceptions.

Now, had the cause been tried by a jury, the party, to be placed in a condition to have entitled him to a revision of the facts in this court, should have moved the court below for a new trial, and, upon being overruled, embodied the evidence in a bill of exceptions. No exceptions could have been supported against the judgment of the court, upon the verdict of the jury, until its attention should have especially and formally been called to a re-examination of the correctness of the verdict. So, too, where the judge is substituted for the jury, the party aggrieved should move for a new trial, and the judge be thus required to revise his finding upon the facts in the case. If the motion is carried, the party will then be entitled to his bill of exceptions on the evidence. This will be found to be the usual rule of practice where the courts are permitted to put the judge, by the consent of the parties, in the place of the jury, in trying the facts in a civil action. In this case, such course was not pursued; the appellant only excepted to the judgment of the court. Upon this practice no point has been made before us in this court, and we shall give the parties the full benefit of a revision of their testimony, the same as if it had been brought here in the most regular and commanding mode. The chief arguments have been made in review of the evidence, and our judgment by both parties is expected to be rendered upon such merits as this evidence discloses.

Mink's claim was founded upon alleged services as one of the appraisers of the estate of the deceased Spiegelberg. It was not questioned that he was duly appointed and sworn. The statute provides that " appraisers shall receive at the rate of fifty cents for every hundred dollars until the termination of the appraisement on property left

by will as well as property left by intestates:" Rev. Codes, 490.

It appears that Spiegelberg, administrator, made an inventory of the deceased's estate, and the same was filed in probate, amounting to the sum of twenty-four thousand one hundred dollars and fifty-two cents. Five days from the date of said inventory, Mink, with C. P. Clever, sworn appraisers, certify that they had appraised the property specified in the inventory at the same sum of twenty-four thousand one hundred dollars and fifty-two cents. This appraisement appears to have been filed with the probate as the true valuation of the estate, and its correctness was never opposed by the administrator. The latter opposed the justness of Mink's demand upon the grounds, to wit:

1. He never performed the services as appraiser to entitle him to compensation.

2. That he agreed to perform those services without compensation.

The only oral witness was Mr. Clever, the joint appraiser. Some objection was made by counsel for Mink, to the competency of this witness, upon the ground that the appraiser's action being reduced to writing, Mr. Clever could not give verbal testimony as to anything said or done by Mink touching the premises. We think that the court properly admitted the witness to testify, and upon grounds so obvious as not to require further remark in this opinion. Clever's testimony unfolds a state of affairs which calls for our marked condemnation from this place. We are unable to say that any fraud was actually practiced upon those interested in the estate; but the mode of procedure, if permitted to go unrebuked, and should it be repeated, might lead to frauds upon estates, heirs, and creditors, of the most aggravated character. A large portion of the estate consisted of merchandise. Clever testifies that he, the witness, appraised the goods in company with the administrator; that Mink did not invoice the said goods, nor did he render any service in the invoicing; that Mink was probably in the store two or three times during the appraisement. Clever states the reason for this strange conduct to have been, that

the witness and his partner had purchased the goods of the administrator at a certain percentage on the original cost, and as they were going to put said goods on the market, they did not desire said Mink to know the prices of said goods.

The way the goods were appraised was by putting a percentage on the original cost. As to the other items in the account, witness did not appraise them, nor does he know whether the plaintiff appraised them or not. The list of the other items was made out by the administrator and Mink, and the administrator brought the certificate of appraisement to the witness and told him it was all right, and he signed the certificate. Now, it is evident that if Mink was not present and aiding in the invoicing, it was because by design and consent between the joint appraiser and the administrator he was excluded. Whether Mink knew that he was thus combined against, and became willingly passive in his exclusion from his active and sworn duties, the witness does not say. The witness was unwilling to trust the private interest he had in the subject-matters to be invoiced to the information of Mink for fear he might impart his knowledge to the damage of the new partnership in trade then formed.

To all this the administrator became a willing party. What other motive he may have had, aside from the interests of the purchasers of those goods in usurping the duties of Mink, and excluding a sworn agent of the law and the estate from the discharge of his functions, is not brought to view in the testimony. If Mink was unworthy of the trust with which he was clothed, and such was known to the administrator, he should have resisted his appraisement or applied for his removal. From all that appears in this case, it is difficult to resist the conclusion that Mink was appointed, at least with the acquiescence of the administrator, with the hope, if not the positive understanding, that he should passively and willingly minister to the convenience of the parties most immediately interested in the goods to be appraised. We do not see that he was at all unfaithful to their views and wishes. After the goods were

disposed of, it seems that Mr. Clever became passive as to the other items of the estate, though exceeding thirteen thousand dollars in valuation. Mink could not give any knowledge of these items, the imparting of which would injure the private interest of others, and so Mr. Clever retired from further labor, and the administrator joined himself with Mink, in whom both he and Clever seem at this point to have found confidence. The administrator made out the list, and with Mink, brought the certificate to Clever, and told him it was all right, and he signed it. The administrator was well satisfied with Mink's labors; assured Clever that all was right; filed the appraisement with the probate as the true, genuine, and lawfully made appraisement of the estate he was charged to guard, administer, and distribute, and never once thought of applying to the probate to set' aside the valuation, as one made by himself, with one of the appraisers only.

After all this, after Mink had been so complying, and his labor had been so satisfactory to the administrator, we are asked to turn Mink from this tribunal as one having no just claim to pay for services in the capacity to which he was appointed. We can not consent to such an act of wrong and injustice. It is not for Spiegelberg, after having used Mink as he desired; after having found him quiet and unobtrusive, in the midst of the usurpations and irregularities practiced in the mode of appraisement; after having been so well satisfied with Mink, that "all was right;" after having treated the appraisement as truly, properly, and strictly made, and filed the same with the probate, without any attack upon its legal genuineness; after appropriating to himself all these services of Mink, and still claiming all the advantages resulting from them, without once pretending that the estate, or any one interested in the same, had been wronged or defrauded by any commission or any act of bad faith on the part of Mink as appraiser; after all this, we say, it is not for Spiegelberg, in a suit of this nature, to repudiate the fair demand of the appraiser.

As to the ground that Mink agreed to perform the services without compensation: we take this proposition to be

correct, that when one person performs some service to another without intending to charge pay while performing the same, and is so understood by the recipient of the services when done, the person so performing has no legal claim maintainable in a court of justice. Clever proves that he charged nothing for his services as appraiser, nor did he intend to charge anything, because his impression was that the appraisers were not to charge anything. Clever knew that he made such an agreement, and thinks Mink made the same; thinks he heard Mink, after the commencement, say he did not intend to charge anything, and would not have done so had the administrator treated him well, but that he now would charge all the law would give him.

Mink was an agent appointed by law to perform certain duties. His compensation was fixed by law and put beyond the control of the administrator. To establish that Mink renounced to the latter his lawful claim to pay, the evidence must be of the clearest, most direct, and certain character. He was the agent of the law, and not the employee of Spiegelberg, and not dependent upon his will for his pay. Clever says he made no charge, and thinks Mink was to have made none. His impressions are not sufficient to defeat another in his clear and just legal rights. Clever was interested in the concealment of the prices of the goods, as he states, and therefore might well have agreed to charge no pay, if that could assist him in procuring the appointment.

Mink had no such interest. The estate was abundant and rich in property, and the administrator was under no necessity, no obligation to procure the services of such as would labor for nothing. We think the testimony insufficient to maintain that Mink renounced his claim to pay. As to the amount of the judgment below, it seems the same as that approved and allowed by the probate. The action of the latter may have had some influence upon the mind of the district court. Both the probate and the district courts probably took an equitable view of Mink's actual labor. Be that as it may, Spiegelberg has no cause to complain.

Had the judgment been for a larger amount, we would not disturb it. The allowance of payments, and the approval of claims, to the legal and judiciary agents of a decedent's estate, are so specially within the province of the probate, that another court will not be disposed to disturb its action when the proceedings have been fairly and regularly done, and it has had a full knowledge of all the facts legitimately connected with the subject-matter.

While the district and this court have their supervisory powers, they will duly respect the acts of the probate in those matters intended by our laws to be so thoroughly submitted within its province. We, however, admonish that court of the necessity of great vigilance, that its confidence may not be too lavishly bestowed on persons full of zeal to acquire the control of wealthy estates whose heirs are not infrequently in Europe. In the wise care of no one is the heir's interest, as such, so reposed as in our probate courts. All legal agents appointed in pursuance of law, to duties, trusts, or powers touching such interests, should be as far removed as possible from selfish and corrupting motives.

It is the unanimous opinion of this court that the judgment of the district court be affirmed, with costs.